399 So.2d 178 (1981)
STATE of Louisiana
v.
Wayne Allen McCLINTON.
No. 80-KA-2650.
Supreme Court of Louisiana.
May 18, 1981.
Rehearing Denied June 22, 1981.
*179 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Dale G. Cox, Asst. Dist. Atty., for plaintiff-appellee.
Howard M. Fish and Jeanette G. Garrett, of Indigent Defender Program, Shreveport, for defendant-appellant.
WATSON, Justice.[*]
Defendant, Wayne Allen McClinton, was convicted by a jury of attempted second degree murder, in violation of LSA-R.S. 14:30.1 and 14:27. His sentence was 35 years at hard labor. He has appealed his conviction and sentence, assigning fourteen errors by the trial court, and presenting eight arguments.

FACTS
On Sunday morning, December 30, 1979, Willie Howard, Jr., the 63 year old owner of a convenience store in Shreveport, had his C. B. Grocery open for business. A man wearing a brown scarf on his chin entered about 9:00 A.M., and said: "Get up", and "Get over there", before shooting Howard in the face from a distance of about six feet. Because Howard turned his head, the bullet went through his nose, and he escaped serious or fatal injury. Howard recognized the gunman as a ten or eleven year customer at his store. The only other person present was Mable Howard, an older sister. Howard telephoned for an ambulance and sent Mable to fetch Vera Belion. Vera had worked in the store about eight years and Howard wanted her to help him name the assailant. Howard told Vera he was shot by "little Isaac McClinton's brother." She responded: "You mean, Wayne?" Howard said, "Yes." (Tr. 453) Both Vera and Howard knew of two McClinton brothers, Isaac, Jr. and Wayne. Isaac, Sr. testified that he had only the two sons.
Howard selected McClinton's photograph immediately from a group he looked at in the store on January 2, 1980. At trial, Howard also identified defendant as the man who shot him. Mable Howard does not normally work in the store but helps out on Sundays while Mrs. Howard is at church. She did not know McClinton and could not identify him. She said she was *180 scared and must have been staring at the gun. Vera Belion testified that McClinton was known to her as a long time customer of the store. She also identified his photograph.
Isaac McClinton, Sr. testified that Wayne Allen was asleep that morning when his father came home from work at 9:15 A.M. Lottie McClinton, his mother, said that Wayne Allen was in bed until almost 10:30 A.M. and did not leave the house before that time. Isaac, Jr. was sleeping in the same room and said Wayne was asleep when Isaac went to the bathroom around 7:00 A.M. According to Isaac, Jr., it takes about fifteen minutes to walk to the C. B. Grocery from their house on a back trail. Isaac, Jr., admitted that Howard, called "Mr. Pete", had known him and his family a long time. Defendant McClinton, who does not own a bicycle or a car, said that it would take him thirty minutes to walk to the C. B. Grocery on the road. He disclaimed any knowledge of a trail. Vera Belion said that most of the customers from the McClintons' area came to the store by the back trail. Wayne Allen, his brother, father, and mother all agreed that Wayne Allen left his home that morning at 10:30 A.M. in the company of his father, mother, sister Priscilla, and Priscilla's baby.
Defendant turned himself in on January 9, 1980, after police talked to his mother on January 8 and he heard they were looking for him.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
Defendant contends that the trial court erred in failing to suppress the identification of his photograph by the victim; that, without this identification, there was no probable cause for his arrest; and that the trial court erred in failing to suppress all evidence resulting from the illegal arrest.
It is argued that Wayne Allen McClinton's name was planted in Howard's mind by Vera Belion. Since Ms. Belion viewed the photos first, defendant maintains that the likelihood of misidentification was great.
The evidence at the motion to suppress was substantially the same as that at trial, summarized supra. Howard was very familiar with his assailant's face, viewed him from a distance of five or six feet, looked him "dead in the eye" (Tr. 92) and had no difficulty at all in the identification. Howard knew who the gunman was and merely wanted help from Vera in remembering his first name. Although Ms. Belion viewed the photographic lineup before Howard, she did so separately and did not communicate with him in the interim.
It is conceded that there is nothing in the selection of six photographs to suggest which one was the guilty party. There was no significant lapse of time between the crime and the photographic identification. Compare Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Howard had the opportunity to view his assailant in a good light for several minutes, heard his voice, must have been attentive under the circumstances, accurately identified him by last name and relationship immediately after the event and at no time showed any uncertainty. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that a mistrial should have been granted because the state's opening statement was detailed rather than general as required by LSA-C.Cr.P. art. 766.[1]
The scope of the state's opening statement is generally left to the discretion of the trial judge. State v. Kinchen, 342 So.2d 174 (La., 1977) The statement here, *181 while more detailed than necessary, did not prejudice defendant's rights.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant contends that the trial judge erred in allowing Isaac McClinton, Sr., to be questioned concerning his activities on January 9, 1980, on the ground that it was irrelevant and not competent for impeachment purposes under LSA-R.S. 15:494.[2]
The questions were allowed as a test of the witness's memory. The day his son was arrested should have been a memorable one. Some latitude is allowed in cross-examination. State v. Weathers, 320 So.2d 895 (La., 1975).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER NINE
Defendant contends that a mistrial should have been granted because the prosecutor asked defendant when his photograph had been taken, and thereby inferred past involvement in other crimes. LSA-C.Cr.P. art. 770.[3] The state argues that the question was intended to show the photograph was a recent likeness but concedes that the jurors' view of the picture was better evidence on this point. The question was withdrawn after defendant answered "Three years ago." (Tr. 589)
The photograph is a head shot with no indicia of a crime-connected source. There is no basis to infer that the jury regarded the question and answer as a comment on other crimes by the defendant. State v. Curry, 390 So.2d 506 (La., 1980).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
Defendant contends that an adequate foundation was not laid for impeachment testimony about a pretrial statement which was inconsistent with his trial testimony.
LSA-R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
Defendant was asked if he had talked to Detectives Smith and Olds on January 9, 1980, about the events of December 30 and what he had told them about his whereabouts on that day. Defendant replied:
"A. I told them that I was at home in the bed.
"Q. All day.
"A. Not all day."
Defendant was not specifically asked if he had told the police he had been at home all *182 day on December 30. Detectives Olds and Smith testified for impeachment purposes that McClinton had told them he had been at home all that day. At trial, McClinton testified that he had gone to visit his girlfriend about 3:00 P.M.
There was some compliance with the statute. McClinton's attention was directed to the time, place and circumstances of his statement to the police and he was questioned about the gist of what he told them. A better opportunity to explain the minor contradiction should have been afforded. However, the error was harmless. The question of McClinton's whereabouts at 3:00 P.M. was not relevant to his alibi defense and it is very unlikely that the jury was influenced by this insignificant discrepancy. There was no prejudice to McClinton's substantial rights which would require reversal of the conviction. State v. Boyd, 359 So.2d 931 (La., 1978); LSA-C.Cr.P. art. 921.[4]
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant contends that the state's rebuttal argument was so inflammatory that a mistrial should have been declared. LSA-C.Cr.P. art. 774.[5] The prosecutor told the jurors that if they were shot at close range on the courthouse steps by a person with a familiar face, they would never forget the face and could make an accurate identification. It is argued that this was an appeal to the jurors' fears and prejudices and warranted a mistrial.
The argument was designed to bolster Howard's credibility. It was improper for the prosecutor to make the jurors think of themselves as crime victims. State v. Lee, 340 So.2d 180 (La., 1976). However, the argument was not sufficiently prejudicial to warrant the drastic remedy of a mistrial.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THIRTEEN
Defendant contends that there was insufficient evidence to convince a rational trier of fact that he is guilty, and a new trial should have been granted. It is argued that the alibi evidence outweighed the identification of the victim.
The only evidence which cannot be reconciled with defendant's guilt is the testimony of Wayne Allen McClinton and his mother. Defendant could have committed the crime and returned home before his father arrived there and could have done so without awakening his brother. The jurors could consider Mrs. McClinton's love for her son and his self-interest in weighing their credibility.
Viewed in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

ASSIGNMENT OF ERROR NUMBER FOURTEEN
Defendant contends that his sentence is excessive and that the trial court failed to properly comply with the sentencing guideline in LSA-C.Cr.P. art. 894.1.
Since this unprovoked and irrational shooting of an elderly man could have resulted in "Mr. Pete's" death, the thirty-five year sentence is not excessive on its face.
McClinton was only nineteen years of age at the time of trial and did not have an adult criminal record. The trial judge reviewed his extensive juvenile record, noted *183 that a crime in 1976 involved the use of a dangerous weapon, and concluded that McClinton has a propensity for criminal activity. The court found an undue risk of other crimes being committed and a need for correctional treatment. Since the injury to Howard could have been fatal a lesser sentence was declared inappropriate as a deprecation of the seriousness of the offense.
There was sufficient compliance with C.Cr.P. 894.1 to provide a basis for this court's review. The sentence of thirty-five years is not an abuse of discretion. Remand for further articulation of reasons for sentence is unnecessary.
For the foregoing reasons, the conviction and sentence of defendant, Wayne Allen McClinton, are affirmed.
AFFIRMED.
NOTES
[*] Judges O. E. Price and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, and Judge G. William Swift, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Dennis and Watson.
[1] LSA-C.Cr.P. art. 766 provides:

"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms the nature of the evidence by which the state expects to prove the charge."
[2] LSA-R.S. 15:494 provides:

"It is not competent to impeach a witness as to collateral facts or irrelevant matters."
[3] LSA-C.Cr.P. art. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during a trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; and
"(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[4] LSA-C.Cr.P. art. 921 provides:

"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
[5] LSA-C.Cr.P. art. 774 provides:

"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."