DOMENGEAUX, Judge.
The defendant, Leonard Scott, was indicted by a Beauregard Parish Grand Jury for the crime of first degree murder, a violation of La.R.S. 14:30. The indictment was amended to second degree murder, a violation of La.R.S. 14:30.1. On October 10, 1985, a motion to suppress hearing was held before the Honorable L.H. Coltharp, Jr. of the Thirty-sixth Judicial District Court. On November 7, 1985, Judge Col-tharp denied defendant’s motion. On December 2, 1985, trial commenced and on December 4,1985, the defendant was found guilty before a twelve person jury of a lesser included offense, manslaughter, a violation of La.R.S. 14:31. On March 24, 1986, the defendant was sentenced to forty-two years at hard labor under the habitual offender statute. La.R.S. 15:529.1.
The defendant now appeals the conviction and sentence based on five assignments of error.
FACTS
On May 29, 1986, defendant Leonard Scott met the victim, Thomas Bradford, in DeRidder. Scott was living with his aunt on Magnolia Street in DeRidder and Bradford lived next door. The two went drinking and ended up in Leesville. Eventually, the two men returned to Bradford’s apartment, where they began arguing. Bradford took a swing at Scott and Scott swatted Bradford’s hand down and hit him with his fist, and knocked him on the couch. Bradford got up and swung at Scott again, and Scott grabbed a hammer off a table and hit Bradford in the head with the hammer. Scott repeatedly hit Bradford in the head with the hammer, approximately ten times. Scott then threw a sheet over Bradford, took some of Bradford’s money, his car keys, and left in Bradford’s car and threw the hammer, clothes and towel in an isolated area near Rosepine, Louisiana. Scott then returned to drinking in Lees-ville.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant argues that the trial court erred by not granting a mistrial after prejudicial remarks had been made during the jury voir dire examination. Specifically, the defendant contends that the trial judge, in a discourse with a potential juror, made prejudicial statements in the presence of the entire jury venire.
The language which the defendant finds prejudicial concerns an examination of a juror about her religious beliefs. The potential juror, Kerry Woods, expressed that she could not judge another human being because of her strong religious beliefs. She also stated that she was a member of the Church of Christ. The trial judge then commented on Mrs. Woods’ religious convictions, stating:
“All right, I understand what you are saying, but I hope you can understand that if everybody had_ Just a minute. If everybody had your view, our system of law simply wouldn’t function, and we’d all run around knocking each other off ... ”
After this comment, the defense attorney approached the bench and the trial judge admonished the jury as follows:
“Let me say to you jurors that have been chosen and to all of you, my choice of words perhaps was unfortunate when I commented about what might be the result of jurors who are — or citizens who felt that they could not serve as jurors by running around knocking one another off. Please disregard that comment. I did not ... was not making that with reference to this case, and since there is a homicide involved, it was a poor choice of words on my part. But I simply meant to indicate that there has to be for our system to work citizens who are willing to sit in judgment. This is because of the need for fairness to the communi *1176 ty in which the offense occurs. So please disregard that terminology, and we’ll proceed on here.”
Prior to the new witnesses being sworn in, defendant moved for a mistrial and that motion was denied.
La.C.Cr.P. Articles 770 and 771 address the situations when prejudicial remarks are made in the presence of a jury.
La.C.Cr.P. Article 770 provides in pertinent part:
“Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1)Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury:”
La.C.Cr.P. Article 771 applies in situations outside the scope of Article 770. La. C.Cr.P. Article 771 provides in pertinent part:
“In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.”
La.C.Cr.P. Article 771 leaves the decision whether to grant a mistrial or to admonish the jury to avoid the prejudicial testimony to the sound discretion of the trial court. State v. Smith, 418 So.2d 515 (La.1982); State v. Goods, 403 So.2d 1205 (La.1981). In State v. Burdgess, 434 So.2d 1062 (La. 1983), the Supreme Court held that a trial judge should grant a mistrial only where the prejudicial remarks result in substantial prejudice to the defendant, and it is impossible for the defendant to obtain a fair trial.
In the present case, the juror’s religious beliefs were relevant to her appropriateness as a juror. No connection was made between the juror and the defendant. No mention was made of the defendant’s religion or his religious beliefs. Nor was there any showing that the comments would create prejudice against the defendant in the mind of the jury. Therefore, the trial judge’s comments are outside the scope of La.C.Cr.P. Article 770, and we must look to the provisions of La.C.Cr.P. Article 771.
The trial judge, in his discretion, believed an admonition would suffice, despite the defendant’s motion for a mistrial. Prom the context of the judge’s initial comments and subsequent admonition, the record reveals that the trial judge was not trying to prejudice the jury against the defendant. The trial judge’s admonition tried to cure any problems that may have resulted from the casual remarks he made to the jury. “Casual remarks of the trial court not calculated to influence the jury are not grounds for mistrial or for the setting aside a verdict after conviction and sentence.” State v. Kenner, 290 So.2d 299 (La.1974).
We also conclude that the trial judge’s remarks are not comments on the facts under La.C.Cr.P. Article 772. The comments here were made prior to any evidence being received. They were not made with reference to defendant. Nor did they express the judge’s opinion as to the guilt or innocence of the defendant.
Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error the defendant argues that the trial court erred in *1177 failing to grant a mistrial after the prosecutor made prejudicial remarks in his opening statements.
The assistant district attorney, in his opening statement, stated the following:
“... I intend to show you that this man, defendant, this defendant, Leonard Scott, on the night of May 29, 1985, in the apartment of Thomas Bradford’s, around ten o’clock until about eleven o’clock, beat, literally beat the brains out of Thomas Bradford and killed him, and he did maliciously and brutally.”
After the trial court admonished the jury, the defendant’s attorney moved for a mistrial, which motion was denied.
La.C.Cr.P. Article 766 provides:
“The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.”
The prosecutor’s opening statement is not evidence and has no probative force. It is designed to inform the jury so that they may understand the evidence as it unfolds and to protect the defendant from surprise. State v. Green, 343 So.2d 149 (La.1977). Also, the trial judge has wide discretion in controlling the scope and extent of the opening statement. State v. Brown, 428 So.2d 438 (La.1983); State v. McClinton, 399 So.2d 178 (La.1981).
The district attorney’s statement in this case does not fall within the scope of La.C. Cr.P. Article 770 requiring a mistrial. Under La.C.Cr.P. Article 771 when the trial judge’s admonition is sufficient to assure the defendant a fair trial, a mistrial is not required. A review of the record shows that the trial judge’s admonition cured any impropriety in the prosecutor's remarks which could have prejudiced the defendant.
Accordingly, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error the defendant claims the trial court erred by allowing the State to introduce statements of the defendant which had not been revealed to him in the answers to defendant’s motion for discovery. The defendant has not briefed this assignment of error, therefore it is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
ASSIGNMENT OF ERROR NO. 4
By this assignment of error the defendant argues that the trial court erred in failing to suppress statements of the defendant introduced by the State at the defendant’s motion to suppress hearing. On October 10, 1985, the defendant’s motion to suppress was heard by the trial court. At issue in that hearing were statements made by the defendant on June 3, 1985. The defendant argues that those statements should have been suppressed because they were induced by implied promises, and thus not freely and voluntarily given.
The record shows that the defendant was questioned four times before January 3, 1985, and did not confess at those times to killing Thomas Bradford. On June 3, 1985, several investigating officers informed the defendant that if he cooperated, they would recommend to the district attorney that he not seek the death penalty. The officer, however, did tell the defendant that he could not guarantee the death penalty would not be sought.
Whenever the State seeks to admit a confession, the State must prove that it was freely and voluntarily given, and that no threats or promises were made to induce the defendant into giving a statement. State v. Nuccio, 454 So.2d 93 (La.1984); La.R.S. 15:451.
La.R.S. 15:451 provides:
“Before what purposes [purports][1] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.”
*1178 In State v. Jackson, 381 So.2d 485, 486 (La.1980), the Louisiana Supreme Court stated the following:
“The United States Supreme Court has held that confessions obtained by ‘any direct or implied promises, however slight, or by the exertion of any improper influence’ is involuntary and inadmissible as a matter of constitutional law. Bram v. United States ... 168 U.S. 532, 542-543, 18 S.Ct. 183 [186-187], 42 L.Ed. 568 (1897). The rationale of Bram is that even slight inducements held out by a person in authority such as a police officer or prosecuting attorney may render a confession involuntary because the person accused would believe that such an authoritative person is credible and in a position to give effect to the inducement. ...”
Once a defendant alleges specific instances of misconduct in reference to a statement, it is incumbent upon the State to specifically rebut each instance. State v. James, 459 So.2d 28 (La.App. 1st Cir. 1984). The trial court’s conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Loyd, 425 So.2d 710 (La.1982). The decision of the trial court on the question of whether the confession was voluntarily given is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Jackson, 414 So.2d 310 (La.1982); State v. Haynie, 395 So.2d 669 (La.1981).
The record shows that the defendant was advised of his Miranda rights and waived them by signing a waiver of rights form. The defendant, after signing a waiver of rights form told the investigating officers that he was willing to discuss the case. Then the officers proceeded to ask the defendant a list of questions. After that questioning was completed, the officers went over some facts that they felt were pertinent and which pointed to the defendant as a suspect.
Deputy Robert McCullough, Chief Criminal Investigator for the Beauregard Parish Sheriff’s Department, testified concerning an exchange with the defendant at that time, stating the following:
“Okay, at this time I told Mr. Scott that if he would tell us the truth about what had happened about the death of Thomas Bradford, that I would make a recommendation to the district attorney that he not seek the death penalty, that it was only a recommendation, that I was in no position to make any promises to him, that the District Attorney was the only one that could promise him that he would not seek the death penalty. All it would be from me was just a recommendation. I told him that if I promised him that the DA would not pursue the death penalty, that I would be lying to him, and that if anybody else in the room promised him that, that they would also be lying to him. And I asked him if he understood that that was just a recommendation and he stated that he did.”
The other officers in the room at the time of the questioning, Jerrel Lambright, investigator for the District Attorney’s Office, and Bill Lambright, assistant chief of the DeRidder Police Department, also testified that the defendant was only told that a recommendation against the death penalty, not a promise or a guarantee, would be made to the District Attorney’s Office.
The defendant testified at the hearing, however, that the only reason he cooperated was because the questioning officer promised that the District Attorney would waive the death penalty.
In denying the defendant’s motion to suppress, the trial judge chose to believe the testimony of the officers instead of the testimony of the defendant. Furthermore, the trial judge ruled that McCullough’s statement that if the defendant would tell the truth, he would recommend to the District Attorney that the death penalty be waived, was not sufficient to make the defendant’s confession involuntary and inadmissible in evidence.
The cases of State v. Vernon, 385 So.2d 200 (La.1980), and State v. Lastrapes, 443 So.2d 652 (La.App. 3rd Cir.1983) are apposite to the facts in this case.
In State v. Vernon, supra, the Supreme Court ruled that an officer's statement to *1179 the defendant that if he cooperated it would be brought to the attention of the District Attorney’s Office was not an improper inducement to a confession. In State v. Lastrapes, supra, an officer’s statement to the defendant that he would advise the District Attorney that she had cooperated and ask him to look into the possibility of placing the defendant on probation was held not to render her statement inadmissible.
The admissibility of a confession is justly a question for the trial judge in his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence. State v. Jackson, supra; State v. Edwards, 406 So.2d 1331 (La.1981), cert, denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467.
In the present case, the evidence supports that the officer’s statement was not a promise or guarantee but merely a suggested recommendation. Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendant argues that his forty-two year sentence is excessive.
The maximum sentence for manslaughter is twenty-one years. With the habitual offender statute, La.R.S. 15:529.1, the maximum sentence the defendant could receive is forty-two years. The defendant, therefore, received the maximum sentence under law.
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be within its statutory limits and still be viola-tive of a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979).[2] A trial judge, however, is given wide discretion in the imposition of a sentence within the statutory limits, and only when there is an abuse of discretion would the sentence be set aside as excessive. State v. Sepulvado, supra.
The appellate court is held to a special standard of review when the maximum sentences are imposed. In State v. Jones, 398 So.2d 1049, 1053 (La.1981), the Louisiana Supreme Court stated “Maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense, and for the worst kind of offender. Nothing else will justify the great sentencing discretion given the trial judge in Louisiana.”
In this case, the record reveals that the defendant is the worse kind of offender and his crime involved the most serious violation of manslaughter.
The defendant, age 26, single with no dependents, has an extensive criminal record dating back to when he was twelve years old. In fact, by the time he was 17, he had been arrested and adjudicated for six offenses. Once the defendant reached adulthood, he continued his criminal activity. All of the defendant’s offenses prior to the one in this case occurred in Ohio.
In March, 1979, the defendant was charged with grand theft and escape. Those charges were reduced to unauthorized use of an automobile and resisting an officer. For these offenses the defendant served a total of fifteen days.
In October, 1979, defendant was arrested for attempted murder; in November, 1979, indicted for felonious assault; and in December, 1979, he pleaded guilty to aggravated assault. He was sentenced for one to five years in the Ohio Department of Corrections and subsequently put on probation in April, 1980.
In June, 1980, the defendant was charged with disorderly conduct and crimi *1180 nal trespass. In August, 1980, he was fined for disorderly conduct, and the trespass charge was dismissed.
In January, 1981, the defendant was arrested for unauthorized use of property, and in June, 1981, he was sentenced to six months in the county jail.
In March, 1981, the defendant was charged with aggravated robbery and felonious assault. In June, 1981, he pleaded guilty to robbery, and in July, 1981, he was sentenced to two-fifteen years to be served consecutively with probation revoked. This particular crime involved much violence towards the defendant’s own mother.
The defendant was paroled in March, 1985, for the 1981 incident and at that time he came to DeRidder to live with his aunt. Within two months time the defendant was again in trouble with the law.
In the present case, it is relevant to note that the defendant was initially indicted for first degree murder, which was later amended to second degree murder. Although the defendant was found guilty of manslaughter, the record reveals that this was a violent crime. Medical testimony revealed that there were at least ten blows to the face and head with a hammer, and the victim was manually strangled.
In addition, at the time of the crime, the victim’s alcohol content was measured to be .26, more than twice the legal amount for intoxication in Louisiana. Medical testimony revealed that the victim did not have any defense wounds on his hands or arms, tending to show that he did not put up any resistence. The defendant left the scene of the crime, taking the victim’s money and car keys. The defendant cleaned up, changed clothes, and drove, in the victim’s car, to Rosepine, where he threw the hammer and bloody clothes in an isolated area. The defendant then returned to Leesville, spending the rest of the night drinking.
In sentencing the defendant to the maximum sentence, the trial judge commented on the defendant’s dangerousness to society:
“And I think a thing that says a lot about you, Mr. Scott, and it's not particularly good, that after this horrible thing had happened, you went right back to where you and this man had been drinking earlier in the evening. You drove up there in his car, and you sat there and drank with the bar-maids until this place closed, and that’s some pretty cold actions. And I think what you did in this case, and coupled with your past record in Ohio for violence, makes it very clear to me, Mr. Scott, that you are a real threat to society. I think you’re a dangerous man.
You — it may be that you act this way primarily when you drink. But for whatever reason, whether you are cold sober or you’re drinking, it is a real threat to society for people to be walking around on our streets that react to things the way you have done in several instances. I think that from what I can see, your emotional and mental make-up is such that you have a tendency or a propensity toward a continuing criminal activity of a violent nature. You have been afoul of the law since you were twelve years old in various ways, some violent and some non-violent.
You had only been out on parole, Mr. Scott, for slightly over two months, a few days over two months, where you had just gotten out of prison for having, in effect, beaten up and robbed your own mother.”
For the foregoing reasons, the trial judge did not err in imposing the maximum sentence. There is no showing here that the trial judge imposed a sentence so grossly disproportionate to the severity of the crime committed, so as to shock this Court’s sense of justice. State v. Nealy, 450 So.2d 634 (La.1984); State v. Bonanno, 384 So.2d 355 (La.1980).
Accordingly, this assignment of error is without merit.
For the above and foregoing reasons the conviction and sentence of the defendant are affirmed.
AFFIRMED.

. "Purposes” should be purports. State v. Joseph, 217 La. 175, 46 So.2d 118 (1950).

. The author of this opinion is compelled to again state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La. 1983). See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; see also State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir.1984), concurring opinion at 1282.