HIGHTOWER, Judge
Following trial before a 12 member jury, defendant, Theodore London, accused by indictment with second degree murder, a violation of LSA-R.S. 14:30.1, was found guilty as charged. The mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence was imposed.
Defendant now appeals, reserving nine assignments of error. However, only four assignments, concerning the denial of motions to suppress and the introduction of certain photographs into evidence, have been briefed. Thus, the other assignments are deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA 2-12.4. Finding defendant’s arguments unpersuasive, we affirm.
FACTS
On the morning of December 24, 1985, defendant went to the home of his friend Ricky Bullard. Both individuals got into defendant’s 1978 Oldsmobile, and Bullard drove to the Central Street Grocery in Shreveport, where he alone entered to buy a quart of beer. After the purchase, the two men traveled a short distance down the street to the Woodlawn Terrace Apartments. While Bullard was visiting with some friends, he noticed defendant get out of the automobile and walk back in the direction of the grocery store. Defendant returned approximately 20 to 25 minutes later and admonished Bullard to get into the car so they could leave. While in route to the residence of his friend, Clydell Hall, defendant wiped blood from his left hand onto his pants, and raindrop-like blood splatters were visible on his clothing. Also, stating that he had just shot someone, defendant pulled a sawed-off shotgun out of his sweatpants and placed it in the back seat of the car.
Arriving at Hall’s house, defendant requested assistance in disposing of the shotgun. After hearing a news account of a murder at the Central Street Grocery, Hall took the weapon to Gayles, Louisiana, where he broke it and threw it into a creek. Several money bags, bearing the names of various banks, were also observed by Hall in defendant’s possession. Additionally, according to Hall, defendant was acting “kind of scared.”
Individuals who had been near the crime scene recounted that a black man, approximately five feet ten inches tall and clad in a long green army fatigue jacket, green shirt, and sweatpants, entered the grocery store wielding a sawed-off shotgun. When he demanded that the store owner, Ms. Alice King, relinquish her money, she said, “You are serious aren’t you.” The assailant responded, “Damn right, b-,” and immediately fired at Ms. King from close range, killing her. None of the witnesses could positively identify the offender.
*512 Pursuing various leads, police questioned Bullard and determined that defendant was the perpetrator of the offense. After a warrant was obtained, defendant was arrested on December 27. Similarly, Hall, after eventually advising authorities of defendant’s request for help in disposing of the shotgun, assisted in its retrieval from the creek.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant contends that the trial court erred in failing to grant his motions to suppress physical evidence seized from his home and automobile, in addition to blood and saliva samples taken from his body, all occurring pursuant to three different search warrants. He further complains, in the same specification of error, about one of the search warrants being admitted into evidence. However, as that aspect of the assignment has not been briefed or argued, it is deemed abandoned. URCA 2-12.4.
While acknowledging the requirement that he establish a defect in the warrants, see State v. Whorton, 440 So.2d 858 (La.App.2d Cir.1983), defendant claims to have satisfied that burden through his demonstration of certain material omissions from the affidavits offered to establish probable cause. On December 26, 1985, a warrant issued for the arrest of defendant. Prior to obtaining that warrant or any of the search warrants, police interrogated Bul-lard who initially denied any familiarity or involvement with the murder. Subsequently, he explained that the denial arose out of his fear of defendant. Unlike Bullard’s eventual statements implicating defendant, the fact of those initial disclaimers was not included in any of the affidavits. Defendant also maintains that the arrest warrant, which issued upon the thus flawed affidavit, bolstered the state’s application for the search warrants.
In ruling on the motion to suppress, the trial court specifically found that the officers acted in good faith. When an affi-ant makes an unintentional, good faith omission of known facts which might have detracted from the showing of probable cause, a reviewing court simply adds the additional information to the affidavit and then retests its sufficiency to show probable cause. State v. Lehnen, 403 So.2d 683 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
Using this commonsense approach, if we assume the omitted information to be relevant and incorporate it into the affidavits presently under scrutiny, probable cause still exists. Consequently, it is unnecessary to discuss the “good faith” exception to the exclusionary rule, the applicability of which the state has urged should defendant’s argument concerning the motions to suppress be accepted. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); State v. Wood, 457 So.2d 206 (La.App.2d Cir.1984).
The affidavit supporting the warrant dated December 27, 1985, which authorized the search of the residence, states that a surveillance officer had observed defendant, who had been arrested earlier in the day pursuant to a warrant, going in and out of the house believed to be his primary abode.[1] Additionally, he was seen wearing a coat, matching a description provided by a witness to the murder, which was believed still to be on the premises along with other clothing worn at the time of the offense. Because the murder weapon, confirmed by the coroner as a shotgun, had not yet been found, the police affiants likewise believed it was on the premises.
Also on December 27, officers applied for a warrant prior to searching defendant’s Oldsmobile in which they felt the murder weapon might be located. The affidavit offered in that connection states that defendant, who was already under arrest, owned the vehicle, a fact confirmed by police discussions with the car dealer from whom defendant had purchased the automobile. After defendant revealed his car’s *513 whereabouts, the authorities had it impounded at the police garage.
Finally, a warrant, issued on May 20, 1986, directed the taking of blood and saliva samples. Besides reasserting defendant’s arrest for the murder, the affidavit sets forth that blood had been discovered both on various items of clothing seized from defendant’s residence and in his vehicle. Further, at the homocide scene, the victim’s blood had been splattered in such a manner that her assailant also could have been splattered. According to a crime lab serologist, ascertainment of the origin of the blood stains on the seized items necessitated the taking of the samples from defendant.
As is readily apparent, then, the additional fact of Bullard’s initial denial of knowledge of the crime does not defeat the probable cause clearly established by the affidavits. Nor does its insertion into the early arrest warrant affidavit cast doubt on the search warrants issued later. Instead, a reluctance to speak candidly because of being afraid of a violent offender is understandable. More importantly, Bullard’s assertion of his fear of defendant actually tends to bolster a probable cause determination.
ASSIGNMENTS OF ERROR NOS. 3, 4 and 8
The other three assignments of error, pertaining to allegedly gruesome photographs, were addressed by defendant in one argument. In particular, defendant asserts that the trial court erred in admitting various photographs, eight in number, into evidence and in prematurely allowing many of the pictures to be shown to the jury in the middle of trial. The disputed photographs illustrate the location of the victim’s body in the store, a totebag and moneybag apparently dropped by the victim, the blood splattered in various places behind the counter, and the victim’s bloody wound and clothes. Also introduced were depictions of the victim’s throat wound after it had been cleaned at the time of autopsy.
In State v. Eaton, 524 So.2d 1194, 1201 (La.1988), cert. denied, — U.S. -, 109 S.Ct. 818, 102 L.Ed.2d 807; reh’g denied, — U.S.-, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989), our Supreme Court recently summarized the law governing the introduction of photographs as follows:
This court has established a number of well settled guidelines regarding the introduction of photographs. The mere fact a photograph is gruesome does not in and of itself render a photograph inadmissible. The test of admissibility is whether the probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Beach, 320 So.2d 142 (La.1975); State v. Morris, 245 La. 175, 157 So.2d 728 (1963). Generally, photographs of a victim’s body which depict the fatal wounds are relevant to prove the corpus delecti, to establish the identity of the victim, the location, severity and number of wounds, and to corroborate other evidence of the manner in which the death occurred. Comeaux, 514 So.2d at 96. The trial court’s admission of an allegedly gruesome photograph will be overturned on appeal only if the prejudicial effect clearly outweighs the probative value. No error will be found unless the photographs are so gruesome so as to overwhelm the jurors’ reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543 (La.1986).
The photographs involved in the present case, although unpleasant, clearly satisfied the criteria for admissibility outlined above. Defendant argues, however, that no dispute existed between him and the state concerning the location of the victim’s body in the store and the cause of her death. In fact, the record reflects that during trial defendant offered to stipulate as to the cause and manner of death and the position of the body. Nevertheless, while an offered stipulation bears upon the balancing test, the decision of admissibility is primarily one for the trial court; the state cannot be robbed of the moral force of its case merely because the defense offers a stipulation. State v. Lopez, 484 So.2d 217 (La.App.4th Cir.1986).
*514 Finally, defendant complains that the crime scene photographs were untimely shown to the jury before the state concluding its case. However, there is no reason that a court cannot allow the jury to view previously introduced evidence at any time prior to argument. State v. Celestine, 443 So.2d 1091 (La.1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984).
These assignments lack merit.
CONCLUSION
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Testimony at the suppression hearing indicated that defendant shared the residence with his girlfriend. Thus, a search of her automobile was sanctioned in the same warrant. However, nothing was recovered from that vehicle.