677 So.2d 617 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Randy ELLIS, Defendant-Appellant.
No. 28282-KA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*620 Teat & Avery by Darrell R. Avery, Jonesboro, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, James R. Hatch, Assistant District Attorney, for Plaintiff-Appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
Randy Ellis was indicted for the second degree murder of his cousin, Donnie Manning, in violation of La.R.S. 14:30.1. After a sanity commission examined him and the court determined that he was competent to proceed, Ellis was tried by a 12-member jury and found guilty as charged. The District Court imposed the mandatory life sentence at hard labor without benefit of parole, probation or suspension of sentence. Ellis now appeals his conviction, advancing 17 assignments of error.[1] For the reasons expressed, we affirm.

Factual background
The incident was a stabbing that occurred in the Cadenhead Street project in Haynesville, *621 Louisiana on the evening July 29, 1994. Both Ellis and the victim, Donnie Manning, had been drinking most of the day. Late that evening the two men argued and fought, with several bystanders watching. Clinton Ellis Jr., the defendant's brother, testified that he pulled them apart and the defendant ran toward his mother's apartment; some time later, he came back and pursued the victim. Two other witnesses, Ricky Beene and Andre Manning (the victim's nephew), testified that Donnie tried to run away but Ellis chased after him, calling, "I'll kill you, m* * * * * f* * * * *,' I'll kill you." Donnie tripped on the curb or the sidewalk; Ellis grabbed him from behind and stabbed him in the chest. Donnie said to Andre Manning, "He done stabbed me." Witnesses saw the knife on the ground afterward, but a bystander grabbed it and it was never recovered. Donnie was not armed. Clinton Ellis testified that he picked Donnie up from the sidewalk and carried him to his (Clinton's) mother's apartment.
Officer Moore arrived shortly after 11:00 p.m. to find Donnie lying face-up on a foam pad on the living room floor, and the defendant and Clinton Ellis Jr. sitting on a couch. The defendant told Officer Moore, "I didn't do anything," and helped him try to take Donnie's pulse. Officer Moore went outside to consult with other officers who had arrived, and during this time the defendant left the room. Moments later, Officers Moore and Walker spotted the defendant crouched and walking between the buildings, apparently trying to leave the scene. Ellis stopped when ordered, and was driven to the police station to protect him from the large crowd that had gathered. Meanwhile, paramedics were unable to revive Donnie and the coroner pronounced him dead at the scene. An autopsy revealed that Donnie's blood alcohol content was .43 g/ml.
After obtaining statements from witnesses, Officers Moore and Walker placed Ellis under arrest and advised him of his rights. Ellis declined to make a statement. The officers detected an odor of alcohol about him but testified that he spoke clearly and responded to their questions at booking.

Discussion: Sufficiency of the evidence
By four assignments of error[2] Ellis contests the sufficiency of the evidence. Arguing that he was too intoxicated to have the specific intent necessary to support a conviction of second degree murder, he cites several witnesses' testimony that he was extremely drunk before and during the incident, and the testimony of his expert psychiatrist, Dr. Joe Ben Hayes, that he suffered an intoxicated "blackout" at the time, thus impairing his judgment and making him unable to distinguish right from wrong. He also argues, without elaboration, that the incident was, at best, a form of manslaughter that does not require specific intent.
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine sufficiency, as the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The appellate review standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992).
Ellis was charged with second degree murder, which is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Ellis does not contest that he stabbed Donnie on July 29, 1994; rather, he urges he was incapable of forming the specific intent required by the statute because of his intoxication at the time of the offense. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or *622 failure to act. La.R.S. 14:10(1). Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La. 1983); State v. Knowles, 598 So.2d 430 (La. App. 2d Cir.1992). The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Knowles, supra.
Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to the prosecution for that crime. La. R.S. 14:15(2). Thus voluntary intoxication is an affirmative defense to a criminal charge and the burden is on the defendant to prove the existence of the condition at the time of the offense. State v. Lott, 574 So.2d 417 (La.App. 2d Cir.), writ denied 580 So.2d 666 (1991); State v. Leroux, 94-133 (La.App. 5th Cir. 7/26/94), 641 So.2d 656.
The State presented the testimony of Andre Manning, Ricky Beene and Clinton Ellis Jr., who established that the defendant and Donnie were arguing and fighting that night; later, the defendant chased and caught Donnie when he fell. Beene and Andre Manning saw the knife in Ellis's hand; Manning actually saw the stabbing. Manning testified that Ellis shouted in his pursuit, "I'll kill you, m* * * * * f* * * * *, I'll kill you"; that after the stabbing, Ellis stuck the knife into the ground and crouched next to Donnie; and that when asked why he did it, Ellis replied something to the effect of, "He shouldn't have hit me." R.p. 407-408.
Notably, Clinton Ellis Jr., the defendant's brother, testified that he stopped a fight between the defendant and Donnie, after which the defendant ran toward his mother's apartment. Later the defendant returned and pursued Donnie. In an earlier statement to the police, Clinton Ellis Jr. said he saw the knife in his brother's hand after he returned from his mother's apartment; at trial, however, Clinton was unsure whether his brother had actually gone inside the apartment.
The facts presentedthat Ellis fought with the victim, left, secured a knife, then chased, threatened and stabbed him in the chestare sufficient to prove beyond a reasonable doubt that Ellis had the specific intent to kill or inflict great bodily harm upon Donnie. State v. Ruffins, 597 So.2d 171 (La. App. 2d Cir.1992); State v. Brown, 618 So.2d 629 (La.App. 2d Cir.), writ denied 624 So.2d 1222 (1993); State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).
In support of his claim of intoxication, Ellis called six witnesses who said they had seen him either drinking or drunk on the day of the stabbing; this point is confirmed by several State witnesses. However, their views as to his level of drunkenness varied.[3] The major component of Ellis's defense was the expert opinion of Dr. Hayes, who examined him in April 1995 (some eight months after the incident) and took his medical history, which included incidents of "blackout" when Ellis was younger. Ellis also told Dr. Hayes that he remembered being on the "trail" about 7:00 p.m., but then recalled nothing until he was at his mother's apartment and the police arrived to arrest him. Dr. Hayes concluded that Ellis had an intoxicated blackout at the time of this offense. He felt that Ellis's "chemical amnesia" rendered him not judgmentally competent. He also diagnosed chronic alcoholism, intellectual deficit and mild organic brain syndrome.
The State countered with the testimony of Dr. Norman L. Mauroner, an expert in forensic psychiatry. He did not dispute that a blackout could have occurred or that Ellis's drunkenness could have impaired his judgment; however, he testified that around 50% of people who commit homicides have amnesia from the act. From reviewing the police *623 reports and witness statements, he concluded that despite his drunkenness Ellis was capable of purposeful action and that his judgment was not grossly impaired. All of the officers who testified in the State's case-in-chief stated that at the time of his arrest and booking Ellis appeared to have been drinking but was by no means senseless.
Faced with these conflicting expert opinions, the jury was entitled to accept whichever one better explained the facts of the incident. La.C.E. art. 702. This court will not disturb the jury's choice to accept one expert's opinion unless that opinion is patently unsound. State v. Stowe, 93-2020 (La. 4/11/94), 635 So.2d 168; State v. Amiss, 230 La. 1003, 89 So.2d 877 (1956). The record shows that Ellis fought with the victim; after being separated from the fray, Ellis retreated, apparently armed himself, chased, threatened and fatally stabbed him the victim. This evidence, viewed in light most favorable to the State, is sufficient to persuade any rational trier of fact that although he had been drinking Ellis possessed the state of mind requisite to desire the prescribed consequences to follow from his acts. La.R.S. 14:10(1). See State v. Hopkins, 626 So.2d 820 (La.App. 2d Cir.1993); State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988); State v. Wisinger, 618 So.2d 923 (La.App. 1st Cir.), writ denied 625 So.2d 1063 (1993).
Finally Ellis urges, without discussion, that "at the most, the State may have presented sufficient proof to convict the defendant of the form of manslaughter that does not require specific intent." Br., 12. Because we conclude that the proof of specific intent was sufficient under Jackson v. Virginia, supra, and not rebutted by the evidence of intoxication, we decline to consider any argument based on the misdemeanor manslaughter rule of R.S. 14:31 A(2)(a) and State v. Brumfield, 329 So.2d 181 (La.1976).
These assignments lack merit.

Challenges for cause
By his first five assignments, Ellis contests the District Court's refusal to grant his challenges for cause of prospective jurors Linda Strother, Imogene Ware, Lola Walker, Jack Ruff and Gerald Moring.
The State constitution guarantees to the defendant the "right to full voir dire examination of prospective jurors[.]" La. Const. art. 1, § 17. Challenges for cause are regulated by La.C.Cr.P. art. 797:
Art. 797. Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
* * * * * *
(4) The juror will not accept the law as given to him by the court[.]
The trial judge is vested with broad discretion in ruling on challenges for cause; his ruling will be reversed only when a review of the entire voir dire reveals an abuse of discretion. State v. Cross, 93-1189 (La. 6/30/95), 658 So.2d 683, and citations therein; State v. George, 26,867 (La.App. 2d Cir. 4/5/95), 652 So.2d 1382, writ denied 95-1151 (La. 9/29/95), 660 So.2d 855. A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Eastin, 419 So.2d 933 (La.1982); State v. Heard, 408 So.2d 1247 (La.1982); State v. Wiley, 614 So.2d 862 (La. App. 2d Cir.1993).
When a defendant uses all his peremptory challenges, a trial court's erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Cross, supra. To prove there has been reversible error warranting reversal of the conviction and sentence, *624 the defendant need only show (1) the erroneous denial of a challenge for cause, and (2) the use of all his peremptory challenges. Id.
The record shows that the voir dire examination consisted largely of general questions posed by the court, State and defense to collective panels of 12 to 18 prospective jurors. Individual questioning of panel members usually occurred when, by a show of hands, one member indicated he or she had a question or "problem" with an area of the applicable law. The minutes also show that Ellis exhausted his peremptory challenges. R.p. 17. The only issue on appeal is the propriety of the ruling on the challenge for cause of each contested juror.
Prospective juror Linda Strother. She initially asked to be excused for extreme inconvenience or undue hardship; this was denied. She stated she was employed as director of nursing at the Dialysis Center of Minden. When questioned by defense counsel, she stated that the defendant's failure to testify would not bear on her decision, but she would "wonder" why he did not testify. Defense counsel followed up by asking if his failure to testify "might enter into" her decision; she replied, "Not really. I feel like I would have to know the defendant to make that decision." R.p. 165. Later, defense counsel asked the panel if anyone had a problem with the law that the defendant could "get off because he was drunk." Ms. Strother replied, "I have a problem with it. I mean, not that I could not ... I mean, if that's the way the law reads, that's the way it reads. But, I might not agree with it." Defense counsel then asked the panel, "Who would have a problem doing that, setting aside their feelings and applying the law?" According to the transcript, several prospective jurors responded by raising their hands; at first counsel did not name Ms. Strother, but later named her. R.pp. 179-180. The prosecutor then asked the panel generally if any of them would not apply the law; several raised their hands, and he discussed it with them, but Ms. Strother did not raise her hand. R.pp. 181-183. He finally asked, "Okay. Anyone else that couldn't apply the law?" The transcript relates, "No response." R.p. 184.
Ellis's first ground for challenging Ms. Strother for cause is that she would "wonder" about the defendant's failure to testify. However, she also stated this would "not really" enter her decision. R.p. 165. In State v. Wiley, supra, this court considered a prospective juror who initially commented she would "wonder" about a defendant who failed to testify, but also stated she would base her decision on her own assessment of the defendant's guilt or innocence. The trial court denied the defendant's challenge for cause, and we affirmed. The situation with Ms. Strother is substantially the same as that presented in State v. Wiley, supra, and her statements do not amount to such a refusal to apply the law as to subvert the trial court's ruling on the challenge.
Ellis's second ground for challenging Ms. Strother for cause is that she allegedly would not apply the defense of intoxication; and that after her initial statement to this effect, neither the court nor the State endeavored to rehabilitate her. In support he correctly cites State v. Cross, supra, which holds:
A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. [Citations omitted.] However, where as here, there has been no attempt to rehabilitate Warner subsequent to his remarks expressing his opinion in this area, the challenge for cause should have been granted.
93-1189, at p. 8; 658 So.2d at 687.
Ellis contends that as in Cross, there was no specific effort to rehabilitate Ms. Strother, thus subverting the court's denial of the challenge. We concede that the record showing is minimal, containing no spoken assertion from Ms. Strother that she would accept the law. However, unlike in Cross, this record is not devoid of effort to instruct the juror. *625 Defense counsel made it clear that anyone who serves would have to set aside personal feelings and apply the law as instructed. R.p. 179. Counsel then named those who indicated they would not do so; he stated that Ms. Strother had raised her hand, but he did not question her further, as he did the others. The prosecutor also questioned each of the jurors questioned by defense counsel, but not Ms. Strother. At the end, he asked if anyone else would be unable to apply the law; the record states, "No response." R.p. 184. From the impassive record, it appears that Ms. Strother initially voiced difficulty in applying the law, but after further explanation she abandoned this position by no longer volunteering that it was a problem for her. The record supports a finding that she demonstratedin a manner consistent with the overall question and answer technique appliedthat she would follow the law. The trial judge was present throughout voir dire and could assess her silent responses to the group questions. By failing to assert, when questioned, that she would refuse to apply the intoxication law she obviously convinced the trial judge that she was rehabilitated. See State v. Heard, supra. Given the trial judge's broad discretion in the matter, State v. Cross, supra, we simply cannot say it was error to deny the challenge for cause. This assignment lacks merit.
Prospective juror Imogene Ware. Ellis challenged Ms. Ware on grounds that she could not apply the law of intoxication. Defense counsel asked other prospective jurors, but not Ms. Ware, about this point on voir dire. The prosecutor then said, "There's a big difference between having a problem setting aside your feelings and applying the law and simply saying I cannot apply that law. So, I'd like to find out." R.p. 181. Ms. Ware replied, "I don't know if I could or not. I don't think I could. * * * I'm not sure if I could." R.p. 182. At this point another juror said, "I don't really think everybody understands the question." The court and the prosecutor then explained:
THE COURT: Alright. I'd like to ask this question. If somebody doesn't like night hunting, does that mean you * * * wouldn't convict somebody of night hunting just because you don't like the law? I mean, that's how I want it phrased. Would you ask it in that regard?
MR. HATCH (Prosecutor): Just because you don't like the fact that the law as it relates to intoxication would prevent a conviction on a specific intent crime, does that mean you could not apply the law as the judge tells it to you? And, I think that's the question ...
R.p. 182.
The prosecutor asked the panel if they could not apply the law; three jurors responded that they could not, and one said she was uncertain. Ms. Ware voiced no further problem with applying the law. When the prosecutor asked if "anyone else * * * couldn't apply the law," the transcript reports, "No response."
Even in view of State v. Cross, supra, the record supports a finding that Ms. Ware initially expressed uncertainty that she could apply the law of intoxication. If nothing else had occurred, then her responses would indeed be "qualified by uncertainty." State v. James, 459 So.2d 1299 (La.App. 1st Cir. 1984), writ denied 463 So.2d 600 (1985); State v. Munzy, 464 So.2d 1040 (La.App. 1st Cir.), writ denied 468 So.2d 1203 (1985). However, after further explanation and discussion she sufficiently demonstrated that this would no longer be a problem for her. The trial court watched the sequence of questions and responses and was entitled to conclude that she was rehabilitated. We cannot say this was an abuse of discretion. This assignment lacks merit.
Prospective juror Lola W. Walker. Ellis urges the trial court should have dismissed this prospective juror for cause. Defense counsel asked, "The mere fact that Mr. Ellis has been arrested, would that raise in any of your minds that he must be guilty of something?" Ms. Walker replied, "It would make me wonder." R.pp. 227-228. Later, she indicated that if the vote were taken right then, she could vote not guilty. R.p. 233. The prospective juror's expression of "wonder" about the defendant's failure to testify does not require a dismissal for cause. State v. Wiley, supra. Likewise, Ms. Walker's "wonder" about the fact of arrest, considered *626 in light of all her responses, does not require her dismissal for cause.
Ellis also urges that Ms. Walker did not agree with the defense of intoxication, as opposed to applying it. The colloquy, however, makes it clear that she could apply the law, even if she disagreed with it. R.p. 233. This is equivalent to accepting the law as instructed and satisfies art. 797(4). The trial court did not abuse its discretion in denying the challenge for cause. This assignment lacks merit.
Prospective jurors Jack Ruff and Gerald Moring. Ellis urges these jurors should have been dismissed because they would fault the defendant for not testifying. Mr. Ruff initially stated that he had no problem with it, but felt it would be "beneficial" for him to testify, especially if he was innocent; he would want to hear the defendant's side of the story. He added, "I still would try to make a fair judgment." R.p. 226. When the juror expresses some doubt about the defendant's failure to testify but affirms that he would decide the case strictly on the evidence presented, the trial court is entitled to find that the juror would accept the law as instructed. State v. Wiley, supra; State v. Mims, 524 So.2d 526 (La.App. 2d Cir.), writ denied 531 So.2d 267 (1988).
Similarly, Gerald Moring stated that the defendant's failure to testify would cause some doubt in his mind. R.p. 227. However, he also stated that if the vote were taken then, he would vote not guilty. R.p. 229. His responses on the whole showed that he could accept the law as instructed. State v. Eastin, supra.
Ellis finally contends that Mr. Moring did not agree with the intoxication defense. The response does not indicate, however, that he could not apply it. R.p. 233. Thus the court was entitled to find he would apply the law as instructed, art. 797(4), and this assignment lacks merit.

Peremptory challenges
By his eighth assignment Ellis urges the State systematically exercised peremptory challenges to exclude African Americans from the jury on account of their race, contrary to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and La. C.Cr.P. art. 795 C. He argues that the State peremptorily excused three prospective jurors: Earlean Howard and Antonio Easter (African Americans), and Liesa Roberts (white), and failed to offer satisfactory race-neutral reasons for excluding them. Ellis concedes that three African Americans were ultimately seated on the jury.
Under Batson, a peremptory challenge by the State cannot be based solely on the race of the prospective juror. A successful Batson argument requires the defendant to make a prima facie case of race-based exclusion, i.e., that the pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group solely on the basis of race. State v. Collier, 553 So.2d 815 (La.1989); State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir. 1991), writ denied 594 So.2d 1317 (1992). The defendant need not be a member of the excluded class. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Once the defendant makes his prima facie showing, the burden shifts to the State to establish race-neutral reasons for its peremptory challenges. These reasons need not rise to the level of a challenge for cause, but must be more than the prosecutor's belief that a prospective juror would be biased because of his race. State v. Tucker, supra; State v. Mamon, 26,337 (La.App. 2d Cir. 12/16/94), 648 So.2d 1347. A neutral explanation must be clear, reasonably specific, legitimate and related to the case at bar. State v. Collier, supra. The trial court's findings as to purposeful discrimination depend largely on credibility evaluations and are thus entitled to great deference by the reviewing court. Id., 553 So.2d at 818; Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1724 (note 21).
Apart from the fact that Ms. Howard and Mr. Easter were excluded from the jury, Ellis offers no other evidence in support of his prima facie case. The trial court found that he did not meet his burden, and did not require the State to give reasons for the exercise of its peremptory challenges. *627 R.p. 263. The State did, however, offer reasons. It stated that Ms. Howard's son had been convicted of DWI and may have a problem with alcohol; as the defense in the case was intoxication, the State felt it was better for her not to serve. The prosecutor also said that Mr. Easter's demeanor and responses indicated he "did not want to be there" and his attire "showed almost a disrespect for the Court." R.p. 263-264. As for Ms. Roberts, the State said her brother was addicted to cocaine. R.p. 264.
The State's comments about Mr. Easter's attitude and attire are matters that the trial court could see and assess for itself; Ellis does not contend that they are erroneous, and we perceive no abuse of the court's discretion. State v. Collier, supra; State v. Mamon, supra. Moreover, a lack of interest or responsiveness is a race-neutral reason to excuse the juror. State v. Collier, supra; State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied 522 So.2d 1092 (1988).
Ellis did not in the trial court contest as inaccurate the State's race-neutral explanations involving Ms. Howard's son and Ms. Roberts's brother, so he cannot now complain of them. State v. Powell, 598 So.2d 454, 462-463 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992); United States v. Forbes, 816 F.2d 1006, 1011 (5th Cir.1987). Moreover, legal problems involving a prospective juror's family members are considered to be race-neutral grounds for the peremptory challenge. State v. Powell, supra; United States v. Forbes, supra.
This assignment lacks merit.

Motion for mistrial
By his sixth assignment Ellis urges the trial court erred in denying the motion for mistrial he lodged during voir dire. On the first day of trial, Assistant District Attorneys James Hatch and David M. Newell were in the courtroom; Mr. Hatch was trying the instant case, and Mr. Newell was present for other cases. While Ellis's jury venire was present, Mr. Newell stated in open court that an unrelated defendant had "pled last week." R.p. 95. Ellis objected, requesting a mistrial and that the jury venire be quashed. Both at the time and on appeal Ellis concedes he can cite no authority to support the motion for mistrial, but asks the court to review it.
None of the grounds for mandatory mistrial are present. La.C.Cr.P. art. 770.[4] Discretionary mistrial is regulated by art. 775, which states in part:
Art. 775. Mistrial; grounds for
* * * * * *
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. * * *
The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion, and will not be disturbed absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Walker, 26,026 (La.App. 2d Cir. 5/4/94), 637 So.2d 583, writ denied 94-1369 (La. 9/30/94), 642 So.2d 868.
As noted, Ellis does not specify how the contested remark prejudiced him in any way. Mr. Newell was referring to another case, and did not even mention the defendant's name. R.p. 95. It is surely common knowledge that some criminal defendants plead guilty, while Ellis steadfastly protested his innocence. There is no showing whatsoever that this remark prejudiced Ellis or compromised his right to a fair trial. State v. Walker, supra. The assignment lacks merit.

Sequestered voir dire
By his seventh assignment Ellis urges the trial court erred in denying his *628 motion for individual voir dire. Defense counsel made this motion in the alternative to his motion for mistrial when Mr. Newell stated that another defendant had pled guilty. R.p. 143.
There is no provision in Louisiana law which prohibits or requires the sequestration of prospective jurors for individual voir dire. State v. Bourque, 622 So.2d 198, 224 (La.1993), and citations therein. The manner in which voir dire is conducted, such as whether the jurors should be called singly or in groups of a certain number, is left to the trial court's discretion. La.C.Cr.P. art. 784, Official Revision Comment (c); State v. Bourque, supra. The burden is on the defendant to show that the trial court abused its discretion in refusing to sequester the venire at voir dire; the trial court does not err in refusing such requests without a showing of special circumstances. State v. Copeland, 530 So.2d 526, 535 (La.1988), cert. denied 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). The defendant must show there will be a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material. State v. David, 425 So.2d 1241, 1247 (La. 1983).
Ellis alleges, without elaboration, that he was caught in the dilemma of needing to show special circumstances (prejudice) before he could get individual voir dire, but of needing individual voir dire in order to show prejudice. However, for the reasons discussed in the motion for mistrial, we do not find that the contested remark was prejudicial. Ellis does not contend that anything else supplied the special circumstances required to have individual voir dire. Without such a showing, we find no abuse of the trial court's discretion. See State v. Caston, 583 So.2d 42, 45 (La.App. 2d Cir.), writ denied 585 So.2d 575 (1991). This assignment lacks merit.

Admission of photographs
By his 10th and 11th assignments Ellis urges the court erred in admitting into evidence Exhibit S-2, a close-up photo of Donnie's stab wound, because it was highly prejudicial, cumulative and without probative value; and in admitting Exhibits S-4 and S-5, photos of the alleged crime scene, because there was no proper foundation, and they were prejudicial, cumulative and without probative value. Without elaboration, he contends that the photos lacked probative value under La.C.Ev. art. 403.
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La.C.Ev. art. 403.[5] Photos of the victim at the murder scene are generally admissible to prove the corpus delicti, corroborate other evidence and establish the cause of death, identity, or the number, location and severity of wounds. A trial court's ruling on the admissibility of such evidence will be disturbed only if the prejudicial effect of the evidence outweighs its probative value. State v. Davis, 92-1623, p. 24 (La.5/23/94), 637 So.2d 1012, 1026, cert. denied ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994), and citations therein. The fact that the photos are gruesome does not of itself render them inadmissible. State v. Beach, 320 So.2d 142 (1975).
A photo need not be identified by the person who took it to be admissible in evidence. It suffices if the photo is shown to have been accurately taken and to be a correct representation of the subject in controversy. State v. Robertson, 358 So.2d 931 (La.1978). A proper foundation for admitting a photo into evidence is laid when a witness having personal knowledge of the subject depicted therein identifies it. State v. Lewis, 478 So.2d 665 (La.App. 2d Cir. 1985); State v. Moore, 419 So.2d 963 (La. 1982). Sufficiency of identification rests *629 largely within the discretion of the trial judge. State v. Strickland, 398 So.2d 1062 (La.1981); State v. Lewis, supra.
As for Exhibit S-2, the forensic pathologist who performed the autopsy, Dr. Brenda Reams, testified about the wound, the possible instrument used, the path and angle of the instrument, and the resultant injuries. The photo was used to illustrate her testimony. The trial court was therefore entitled to find it had probative value. State v. Bourque, supra. Moreover, there is very little blood in the photo, which mainly shows a clean wound. The trial court did not abuse its discretion in admitting it. State v. London, 559 So.2d 510 (La.App. 2d Cir.), writ denied 565 So.2d 941 (1990).
Ellis objected to Exhibits S-4 and S-5 for lack of foundation; the trial court sustained the objection. R.pp. 296-297. The State then asked Officer Moore if the photos looked like what he saw on the night of the crime; he replied that they did. R.p. 299. The court then overruled Ellis's objection.[6] Because Officer Moore's testimony satisfies the requirements of State v. Robertson, supra, the trial court did not abuse its discretion in finding a sufficient foundation for Exhibits S-4 and S-5. Officer Moore also used the photos to help depict the crime scene; thus the trial court did not abuse its discretion in finding that their probative value outweighed their potentially prejudicial effect. State v. Davis, supra. These assignments lack merit.

Improper closing argument
By his 11th assignment Ellis urges the trial court erred by not granting, on its own motion, a mistrial when it sustained an objection to the State's closing argument as inappropriately appealing to the prejudice, sympathy and emotions of the jury. This is the passage that elicited Ellis's objection:
Now, you've heard it and you've heard it and you've heard it. The defendant chased him and he fell. Before he could get up, [indicating] five inches deep. Pretty purposeful. Pretty purposeful. Can you imagine that's what it sounded like in your chest, someone you know's chest?
R.p. 533.
Ellis's counsel immediately objected outside of the hearing of the jury. The court ultimately sustained the objection, citing art. 774 and reasoning that the argument may have appealed to bias or sympathy. R.p. 535. The court stated that it would charge the jury not to be influenced by sympathy, passion, prejudice or public opinion, and instructed the prosecutor not to proceed with that line of argument.[7] Defense counsel then asked if there were grounds to strike the argument from the record; the court denied it, and counsel made no objection.
Ellis now urges that the State's closing argument must be confined to the evidence admitted, the lack of evidence, conclusions drawn therefrom and applicable law. La. C.Cr.P. art. 774. Any argument that asks the jury to put itself in the victim's place, he contends, is improper. In support he cites State v. McClinton, 399 So.2d 178 (La.1981), and State v. Williams, 346 So.2d 181 (La. 1977), but concedes that in both of these cases the error was found not reversible.
Ellis does not contend, and we do not find, that the prosecutor's comments were such as to require a mistrial under La.C.Cr.P. art. 770. At most they would have warranted an admonition (which the court agreed to give) or a discretionary mistrial. La.C.Cr.P. arts. 771, 775. When the trial court sustains the defendant's objection to improper argument, the defendant cannot on appeal complain of the alleged error unless at trial he asked for and was denied either an admonition to disregard or a mistrial. State v. Miles, 402 So.2d 644, 648 (La.1981); State v. Butler, 503 So.2d 1027, 1030 (La.App. 2d Cir.1987); State v. Wall, 452 So.2d 222, 227 (La.App. 1st Cir.1984). Thus Ellis has waived the right to request these remedies on appeal. This assignment lacks merit.

*630 Error patent review

By his final assignment Ellis asks this court to review the record for errors patent, a procedure which we are statutorily obligated to perform. La.C.Cr.P. art. 920(2); State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.), modified on other grounds 624 So.2d 1208 (1993); State v. Warner, 91 1387, 92 0352 (La.App. 1st Cir. 6/24/94), 638 So.2d 1160.
The trial court failed to inform Ellis of the prescriptive period for post conviction relief, as required by La.C.Cr.P. art. 930.8. This defect obviously has no bearing on the sentence and is not ground to vacate the sentence or remand the case. La.C.Cr.P. art. 921. The district court is directed to give appropriate written notice of the prescriptive period for PCR within 10 days of the rendition of this opinion and to file Ellis's receipt of such notice in the record. State v. Powell, 598 So.2d at 471. We find nothing else we consider to be error patent.

Conclusion
For the reasons expressed, Randy Ellis's conviction is AFFIRMED.
NOTES
[1] Assignment of error No. 12 is specifically abandoned. Br., 9.
[2] Assignment No. 13 urges the facts precluded a finding of specific criminal intent; No. 14 urges the evidence supports only a conviction of manslaughter; No. 15 urges the verdict is contrary to the law and the evidence; and No. 16 urges the evidence does not support the finding that Ellis was capable of forming a specific criminal intent.
[3] Robert Livingston said he saw Ellis coming up "the trail" (a popular route between the liquor store and the apartments) and noticed he was "past drunk" and "talking into the air" at 10:00 p.m.; Willie Walton described him as in "kind of a drunk position" and but still able to walk; and his sister Lisa Ellis said that at supper that night he was "just talking," not talking into the air.
[4] Mistrial is mandated when the judge, district attorney or a court official makes, within the hearing of the jury, a remark that refers directly or indirectly to (1) race, religion, color or national origin, if the comment is not material and might create prejudice against the defendant, (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, (3) the defendant's failure to testify in his own defense, or (4) the judge's refusal to direct a verdict. La.C.Cr.P. art. 770.
[5] Contrary to Ellis's argument, art. 403 does not explicitly treat cumulativeness as a factor to weigh against the evidence's probative value. The reference to cumulative evidence in the source, Fed.R.Ev. art. 403, was deleted from the Louisiana Code of Evidence because the Senate Committee felt it was subsumed under the concepts of "undue delay" and "waste of time." La.C.Ev. art. 403, 1994 Authors' Notes (14).
[6] Dep. Talley later testified that he took the photos and they accurately represented the scene as he found it. R.p. 330-333.
[7] The relevant portion of the jury charge appears at R.p. 541.