LOLLEY, J.
Defendant, Isaac Fields, III (“Fields”), was originally charged by grand jury indictment with first degree murder pursuant to La. R.S. 14:30, for the death of Charles Rice (“Rice”), in the Sixth Judicial District Court, East Carroll Parish, Louisiana. He was subsequently tried by jury and convicted on the amended charge of second degree murder pursuant to La. R.S. 14:30.1. A Motion for Post Verdict Judgment of Acquittal or for a Modified Verdict was filed and denied by the trial court. Fields was sentenced to serve a term of life imprisonment without benefit of parole, probation or suspension of sentence. He now appeals his conviction and for the following reasons, we affirm.

*205
FACTS

On the afternoon of July 26, 2000, Fields, accompanied by several other men, stopped at Fat Boys, also referred to as “Key’s Station,” a gas station/convenience store/restaurant in Lake Providence, Louisiana (“Fat Boys”), supposedly to purchase food for his girlfriend. An argument developed between Fields, Kedrick Harris (“Harris”) and Kenny Wayne Jackson (“Jackson”) shortly after they entered Fat Boys. The argument was taken outside and ultimately escalated into a fist fight, with several others joining in the fray. The record indicates that the various witnesses’ accounts differ substantially about who was involved, where they were before and during the fight, and how many people were actually involved. The record shows that at one point, Fields’ mother and grandmother became embroiled in the fight, either as fighters, or in an attempt to stop the fight.
| ^Fields went to the car in which he had ridden to Fat Boys, obtained a semi-automatic rifle, and shot at least five times, killing Rice, who was 19 years of age. The evidence reveals that Rice’s allies fled the scene when the gun was produced. Those accompanying Fields fled in the car they came in, while Fields continued firing additional shots at Harris, one of the combatants in the fight.
Testimony of the forensic pathologist was that Rice was killed by only one of the shots, which pierced both his lungs, causing him to bleed to death. Although there is much variation in the witnesses’ accounts of the fight and shooting, there is fair unanimity on the following facts at issue: (1) the victim was not armed before or during the shooting; (2) the fight was essentially over at the time the shots were fired, and (3) the defendant was armed with a .22 caliber semi-automatic rifle and fired the shots that caused the victim’s death.

DISCUSSION

Assignment of Error No. 1

On appeal, Fields raises three assignments of error. In his first assignment of error, Fields argues that the state failed to present evidence sufficient to support his conviction for second degree murder. Specifically, he argues that the evidence against him was insufficient to support his conviction of second degree murder, and that if he was proven guilty of any crime, it was that of manslaughter. We disagree.

18Sufficiency of the Evidence

When issues are raised on appeal both as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. *206 Virginia, supra; State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687 units denied, 2000-3070 (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.04/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate Lcourt does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, Sec. 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, unit denied, State ex rel. Gilliam v. State, 2002-3090 (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.09/18/02), 828 So.2d 622, units denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied — U.S.-, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, unit denied, 98-0282 (La.06/26/98), 719 So.2d 1048.
| ¿Elements of the offense.
Second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. State v. Ellis, 28,282 (La.App.2d Cir.06/26/96), 677 So.2d 617, unit denied, 96-1991 (La.02/21/97), 688 So.2d 521.
Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Ellis, supra. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendants. State v. Kahey, 436 So.2d 475 (La.1983); State v. Murray, 36,137 (La.App.2d Cir.08/29/02), 827 So.2d 488, unit denied, 2002-2634 (La.09/05/03), 852 So.2d 1020; State v. Ellis, supra; State v. Knowles, 598 So.2d 430 (La.App. 2d Cir.1992). The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Knowles, supra.

Cause of death.

Dr. Steven T. Hayne, accepted at trial without objection as a forensic pathologist, testified that Rice suffered two gunshot wounds to the rear of the left thigh, one of which exited, and one of which did not. Rice also suffered three gunshot wounds to the back, all of which were from the left side. One of the wounds to the back was lethal. The projectile causing that wound struck the victim 17.5 inches from the top *207 of his head, and 7.5 inches left of his mid back, and traveled horizontally through the body and forward | fi(from the back to the front of the body) by approximately 20 degrees. The bullet perforated both lungs, and the victim died of internal bleeding. Four of the projectiles were recovered, but a fifth (the one striking the lower thigh) passed out of the body and was not recovered. There is no dispute that Rice was killed by the gunshot.

Identity of the offender

All of the witnesses to the shooting testified that Fields was the person who fired the shots that killed Rice. Although during his taped confession Fields initially denied having intentionally fired the shots (he claimed to be struggling with another person for possession of a completely different gun when the shots were fired), he testified at trial that he had fired the shots. Fields denied having intended to shoot anyone, and specifically denied having shot Rice. Considering the evidence, there is no serious question about the identity of the person who fired the shots that caused the death of Rice.

Justiñable Homicide

In the instant case, Fields did not assert a believable claim to support a defense of justifiable homicide. Pursuant to La. R.S. 14:20, a homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. :
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the [7fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
Fields’ self-serving testimony that he was being beaten and set upon by a group of men when the shots were fired was contradicted by the testimony of most of the witnesses. Fields’ in-court testimony is completely compromised by his admission that most of his videotaped pretrial statement was a lie. In that pretrial statement, Fields claimed that the shooting occurred during a struggle with another man over control of a .410 bolt-action shotgun. However, the evidence shows the shooting was with a .22 caliber firearm, and, if the struggle was for control of a bolt-action weapon, as Fields originally stated, it is inconsistent with logic to comprehend how one could be in a struggle for control of a bolt-action weapon, while repeatedly working the bolt. Fields admitted at trial that he had lied repeatedly in his earlier statement. His credibility was completely impeached by that admission.
From the witnesses’ testimony, it is clear that Fields could not have had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm or that the killing was necessary to save himself from that danger. Rice was unarmed, some distance away from Fields, and had his back or side turned to Fields when the first shots (to the thighs) were fired. After the first shots, Rice fell to the ground. Even had the first shots (the non-lethal shots to the legs) been justified to stop an attack, the three shots to the back were not justified, because Rice was not in the fight when those shots were fired. The circumstances would not have been sufficient to |Rexcite the fear of a reasonable person that there would be serious danger to Fields’ life or person, if he did not use deadly force.

*208
Manslaughter

Nor do we agree that the facts better support a conviction for manslaughter, which is a lesser included offense of a second degree murder. La. C. Cr. P. art. 814 A(3). A homicide which would otherwise be second degree murder is manslaughter when it is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. “Sudden passion” or “heat of blood” are not elements of the crime of manslaughter, but are mitigating factors in the nature of a defense which exhibit a degree of culpability less than that present when a homicide is committed without them. State v. Scott, 31,379 (La.App.2d Cir.10/28/98), 720 So.2d 415, writ denied, 99-0170 (La.05/14/99), 741 So.2d 664, reconsideration denied, 99-0170 (La.09/03/99), 747 So.2d 529; State v. Stewart, 26,168 (La.App.2d Cir.08/17/94), 641 So.2d 1086, writ denied, 94-2363 (La.01/13/95), 648 So.2d 1337.
A defendant is required to prove by a preponderance of the evidence that he acted in “sudden passion” or “heat of blood” for a verdict of manslaughter to be appropriate. State v. Robinson, 32,794 (La.App.2d Cir.03/01/00), 754 So.2d 311, writ denied, 2000-0989 (La.03/23/01), 787 So.2d 1008. In reviewing a defendant’s claim that he has met that burden, the appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could | flhave found that these mitigating factors had not been established by a preponderance of the evidence. State v. Robinson, supra; State v. Lewis, 28,973 (La.App.2d Cir.12/11/96), 685 So.2d 1130, writ denied, 97-0122 (La.05/16/97), 693 So.2d 797.
Although the situation leading up to the shooting lent itself to this defense, there is no testimony that Fields had lost his self-control or cool reflection or that he acted in “heat of blood.” According to the best-case scenario presented by the testimony, Fields did not start the argument which let to the fight, did not want to engage in a fight, and pulled the gun to stop the fight. However, there is no evidentiary support for a “loss of self-control or cool reflection” defense, other than Fields’ completely self-serving statements. According to several witnesses, after Fields pulled the gun from the car, and aimed it at Harris, Harris’ mother stepped in front of her son and pleaded for Fields not to shoot him. The witnesses testified that Fields turned the gun from Harris to Rice, and shot Rice. This evidence gives effective support for a jury’s finding that the shooting was not done in the heat of passion, but was a considered act.
As noted above, the decisions by the jury on the issues of self-defense and mitigation are credibility decisions and are not a matter of sufficiency of evidence. We find that the evidence in this case is sufficient to convict Fields of second degree murder. Therefore we find no merit to Fields’ first assignment of error.
| Assignment of Eiror No. 2
In his second assignment of error, Fields complains that the trial court’s rulings limited his right to cross-examination and confrontation of witnesses on the pending arrests of two of those witnesses against him.
A careful review of the evidence does not support Fields’ claim of deprivation of cross-examination of the two witnesses. The record shows that Fields had fair leeway to cross-examining these two witnesses and to the degree that there may have been any deprivation, we find the error was harmless because beyond a reasonable doubt the error did not contrib *209 ute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Instead, we find that Fields’ conviction is based on the mass of evidence as discussed herein that showed he committed an unjustified killing of another human being, and not to any deprivation of the right to cross-examination.
One of the two witnesses complained of was Harris, who had pending charges of illegal discharge of a firearm and aggravated battery. The record shows that on August 10, 2000, shortly after Rice was killed, the trial court found no probable cause on the pending charges against Harris. To date, the state has not prosecuted Harris on those charges. At trial, Harris was asked when the last time action had occurred on his pending charges, and he answered, “[WJhen I came to court they ... was, I guess they was gonna dismiss the charges, but they just said continue without fixing. So I never been to court since.” Fields contends that there could have been a showing that Harris either feared prosecution or sought to curry the favor of the state Invis-a-vis those charges, and that this should have been brought out before the jury. We disagree. Harris’ statement shows a fair understanding of the actual status of the case. A juror could reasonably infer that the charge against Harris had ended and that Harris knew that, and neither feared prosecution nor sought to gain favor with his testimony in the present case.
The other witness, Jackson, had a pending misdemeanor charge which had been upgraded to a felony. When Jackson was interrogated about the pending charge, he indicated that to the best of his knowledge, if there was a pending charge hanging over his head, he had not been to court for it, nor did he know what charge was pending. Clearly, there is no showing that any pending charge had any effect on Jackson in the present case. Any deprivation of cross-examination was completely harmless. Logically, one could conclude that these two witnesses did not need to be induced or coerced to testify against Fields as they were not confederates of his. Therefore, it is rational to surmise that their testimony did not have to be forced or induced and that both these witnesses wanted to testify against Fields, who shot and killed their friend. The record shows that Fields was allowed to interrogate these witnesses on their criminal records and on pending charges. Furthermore, they were asked if any favors or plea agreements were offered, to which each witness answered in the negative. We therefore find that Fields’ second assignment of error is without merit.

Assignment of Error No. 3

Finally, in his last assignment of error, Fields contends the trial court erred in not allowing evidence and limiting cross-examination of the same hatwo witnesses on other violent acts they allegedly committed. Fields alleges that Harris and Jackson were acting as principals with Rice and that it was only by chance that Rice was the person who was shot. Fields sought to introduce evidence concerning Harris and Jackson and their acts of violence against third parties to show Fields’ state of mind and his reasonable fear of the group.
Louisiana C.E. art. 404 provides, in pertinent part:
A. Character evidence generally. Evidence of a person’s character or trait of his character, such a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(2) Character of victim, (a) Except as provided in Article 412, evidence of a *210 pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible;
B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request, the prosecution in a criminal trial shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim’s prior threats [ ^against the accused or the accused’s state of mind as to the victim’s dangerous character is not admissible;
According to the rules of statutory construction, Louisiana criminal statutes must be “given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La. R.S. 14:3; State v. Lam, 36,862 (La.App.2d Cir.02/11/2003), 837 So.2d 749, writ denied, 2003-0945 (La.10/03/03), 855 So.2d 308; State v. Hair, 2000-2694 (La.05/15/2001), 784 So.2d 1269.
Specifically, La. C.E. art. 404 refers to evidence relating to “the victim” and does not appear to admit evidence relating to third parties. Although the defendant attempts to broaden the terms of the article, by offering evidence of the acts of those other than the victim, we find the trial court was correct in limiting the evidence, based on the considerations set forth in La. C.E. art. 403, which states:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
The Code of Evidence does not provide for presenting evidence of a witness’ other unrelated specific acts of violence for the purpose of proving that the defendant acted in self-defense. Furthermore, there is no showing in the record of what evidence, if any, was “excluded” by the trial court’s rulings. Accordingly, Fields’ claim that the trial court erred by excluding evidence regarding other specific and unrelated acts of violence of Jackson 114and Harris, which he was offering for the purpose of proving that he acted in self-defense, is without merit.

CONCLUSION

Therefore, for the reasons assigned above, the conviction and sentence of Isaac Fields, III, is affirmed.
AFFIRMED.