|, DREW, J.
A jury convicted Janet Hayes Garner of illegal use of a weapon during the commission of a crime of violence (aggravated battery), for which she was sentenced to 12 years at hard labor without benefits. The conviction is affirmed.
FACTS
At approximately 9:00 p.m. on November 7, 2001, the defendant walked to the Derrick Express, a bar and convenience store in Keithville. She gave her purse, containing a .22-caliber revolver, to bartender Joyce Gast for safekeeping before drinking White Russians, playing video poker, and talking about a fight she had with her boyfriend that night. Gast returned the defendant’s purse sometime during the evening.
Around 11:30 p.m., the defendant called her neighbor; Teresa Shoemaker, at work to ask for a ride home. Shoemaker arrived shortly thereafter. Shoemaker witnessed the defendant drinking alcohol, a contraindication of defendant’s medication, and told the defendant she “ought to have [her] ass kicked drinking on top of those pills.” Words were exchanged between the two women before Shoemaker sat at the bar to have a beer with Henry Floyd Patton, a friend from grade school.
The defendant took a $5 bill belonging to Patton from the bar and a $20 bill out of his shirt pocket. She put the money in her bra. When Shoemaker told her to return the money, the defendant pulled Shoemaker’s hair and refused to stop when asked twice. Shoemaker put her hand around the defendant’s throat and pushed her against a wall. The two women ^struggled until the defendant was prone on the floor as Shoemaker straddled her. Patton and another patron separated the two.
The women exchanged more words before the defendant pulled the revolver from her purse and began shooting. She fired eight shots, one striking Patton in the neck, knocking him to the floor, while another bullet hit Shoemaker in the right arm. The defendant then:
• chased Shoemaker through the bar;
• went into the cooler where two women were hiding and took them at gunpoint to unlock the bathrooms where she thought Shoemaker had hidden;
• forced one of the women to give her a pack of cigarettes;
• took a phone away from the same woman and threw it, disconnecting the 9-1-1 call;
• shot through the bathroom door; and
*735 • put the gun to Patton’s head, threatening to kill him if he would not get off the floor and leave.
When the police arrived, an officer witnessed her taking pills and holding the gun. The defendant finally left the building with her hands in the air when ordered and followed commands to get down on the ground.
The court appointed Dr. George Seiden and Dr. Charles W. Armistead as members of a sanity commission. Seiden testified the defendant knew what she was doing when she shot the two victims and that she knew it was wrong. Armistead concluded he did not have enough facts to decide whether or not she had been insane at the time of the offense.
| .DISCUSSION
Claiming the evidence proved she was not guilty by reason of insanity, the defendant noted:
• while one member of the sanity commission concluded the defendant was legally sane at the time of the offense, the other physician was unable to reach a decision;
• both expert and lay testimony reflected a history of mental illness;
• she took a number of her prescription medications including Depakote, Paxil, and Xanax on the night of the shooting along with other medication not prescribed for her;
• these drugs were contraindicated or aggravated by the use of alcohol; and
• her mental instability and the medication she took for it rendered her incapable of knowing right from wrong at the time of the shootings.
The state responded that:
• Dr. Seiden’s findings proved she was legally sane at the time of the offense;
• the defendant seeks to hide behind a combined defense of insanity and intoxication;
• the defendant’s voluntary consumption of alcohol and medication did not reach a level that would have precluded the presence of intent necessary for the exception allowed by La. R.S. 14:15; and
• the specific intent to commit aggravated battery by firing the handgun was clearly proven and defeated a defense .of voluntary intoxication.
In an action where an affirmative defense of insanity is raised, the proper inquiry for reviewing the sufficiency of the evidence is, applying the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), ie., whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence most favorable to the prosecution, could conclude, beyond a reasonable doubt, that the defendant | Jailed to prove by a preponderance of the evidence that she was insane at the time of the offense. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27.
A mental disease or defect that renders the defendant incapable of distinguishing between right and wrong with reference to the criminal conduct exempts the defendant from criminal responsibility. La. R.S. 14:14. A legal presumption exists that a defendant is sane and responsible for her actions at the time of an offense. La. R.S. 15:432. To rebut that presumption and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. C. Cr. P. art. 652; Silman, supra; State v. Odom, 33,340 (La.App.2d Cir.5/10/00), 760 So.2d 576, writ denied, 00-1816 (La.6/29/01), 794 So.2d 821.
*736 The determination of sanity is a factual matter. State v. Sepulvado, 26,948 (La.App.2d Cir.5/10/95), 655 So.2d 623, unit denied, 95-1437 (La.11/13/95), 662 So.2d 465. All the evidence, including expert and lay testimony, along with the defendant’s conduct and action, must be considered by the fact finder, which determines whether the defendant proved by a preponderance of the evidence that she was insane at the time of the offense. Even if the experts conclude the defendant was insane, the issue is a matter for the jury to decide. Silman, supra; Odom, supra.
The defense of intoxication is governed by La. R.S. 14:15, which states:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
| B(l) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
Intoxication provides no defense to crimes requiring a general intent. State v. Boleyn, 328 So.2d 95 (La.1976). The defendant’s ability to distinguish right from wrong has seldom been discussed in the context of voluntary intoxication. State v. Jordan, 31,568 (La.App.2d Cir.2/24/99), 728 So.2d 954, wrii denied, 99-0893 (La.10/8/99), 750 So.2d 177. A defendant’s ability to distinguish right from wrong is a separate inquiry as to whether the defendant is capable of forming specific intent. Id.; State v. Ellis, 28,282 (La.App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521.
The trial court appointed Dr. Seiden and Dr. Armistead to the sanity commission. Dr. Seiden, who is certified in forensic psychiatry, testified that after reviewing witness statements and interviewing the defendant, he determined the defendant had been intoxicated but knew what she was doing and that it was wrong.
Dr. Armistead did not testify but wrote the following conclusion in his report, which was read in court:
In [sic ] estimation of the patient’s mental status at the time of the offense would require hearing from the testimony of witnesses. It is considered highly likely that this patient in conjunction with the alcohol and the medication she describes she was taking that she may will [sic] not have been aware of |¡¡the quality of her acts or that her acts were wrong. However, I cannot make a statement at this time with any certainty.
The defense also called Dr. John Richie who had treated the defendant for depression after she overdosed approximately nine months before the incident. He testified that he could not determine whether the defendant was sane or not at the time of the shooting, though he noted that the defendant:
• had been treated for mental illness,
• had been raised in an abusive household where her older brother raped her, and
• had overdosed several times.
The jury heard all this, and made the determination that she was sane at the time of the offense.
*737 Teresa Shoemaker, Dawn Phillips, Joyce Gast, Rajeania Permenter, Henry Floyd Patton, and Ashley Luker testified as fact witnesses. There were slight variations in testimony, but the underlying story of what happened that night was the same as previously noted.
Shoemaker said that she knew the defendant had a chemical imbalance and had overdosed before. Luker (who was 17 at the time of the incident) also knew about the chemical imbalance and stated the defendant acted crazy, bizarre, and berserk that night. Gast testified the defendant had a “glazed look” in her eyes during the shooting.
Given the evidence presented including the gun, bullets, bullet fragments, a cigarette pack matching the brand the defendant demanded from Phillips, photographs, a videotape of the crime scene, and witness ^testimony, a rational fact finder could have concluded, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that she was insane at the time of the offense.
The defendant acted deliberately and with calculation in a manner that suggested she knew right from wrong. She made a verbal threat before pulling the gun and firing. She singled out Shoemaker as a target, remembered the store keys were located near the cashier from her prior work in the store, and felt the need to reassure Luker she would not be harmed. She obeyed police orders and surrendered upon command. While a history of mental illness was shown, the physical evidence, expert testimony, and lay testimony clearly showed that the defendant was angry and intoxicated, yet sane at the time of the shooting.
The charge of illegal use of a weapon in violation of La. R.S. 14:94(F) includes the element of “intentional or criminally negligent discharging of any firearm” while committing a crime of violence. The crime of violence was aggravated battery, which is the intentional use of force or violence against another while armed with a dangerous weapon. La. R.S. 14:34. The crime with which the defendant was charged was a crime of general intent. Therefore, despite the fact that the effects of defendant’s medication may have been aggravated by her consuming White Russians, intoxication is not a defense to this crime.
The defendant acted in a manner suggesting she could distinguish between right and wrong at the time of the offense. A rational fact finder could have found, beyond a reasonable doubt, that the defendant failed to [¿prove the affirmative defense of insanity by a preponderance of the evidence.
DECREE
The defendant’s conviction and sentence are AFFIRMED.